**Stanton E. ROSS and Merritt Ross, Plaintiffs,**

v.

**Marlene HATFIELD, Alan Williams, Gene Hamp, Christopher Pickering, and Cindy Scott, individually and as officers or members of the Summercrest Homes Association, Defendants.**

Civ. A. No. 85–2456.

United States District Court, D. Kansas.

July 1, 1986.

---

Charles E. Hammond, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, Kansas City, Mo., for plaintiffs.

Richard L. Routman, Grier & Swartzman, Mark S. Gunnison, McDowell, Rice & Smith, Kansas City, Kan., for defendants.

Frederick W. Finn, Lauritz S. Helland, Brown & Finn, Washington, D.C., for amicus curiae, The Satellite Television Industry Ass'n, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendants' motion to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, defendants' motion will be granted.

Plaintiffs reside within a subdivision of Overland Park, Kansas, known as Summercrest. The defendants are officers or members of the Summercrest Homes Association Board of Managers. A restrictive covenant encumbers plaintiffs' land, barring plaintiffs from erecting television receiving antennae or devices outside their residence. Plaintiffs have installed at their residence a parabolic satellite television antenna, commonly known as a "satellite dish" or "satellite earth station."

Defendants have made demand upon plaintiffs to remove the dish on the ground that it violates the restrictive covenant. Defendants have also threatened to sue plaintiffs in state court to enforce the covenant.

Count I of plaintiffs' complaint seeks a declaratory judgment that the covenant is unenforceable. Plaintiffs allege that the defendants' threatened judicial enforcement of the covenant would violate their first and fourteenth amendment rights. Plaintiffs also allege that the covenant is preempted by the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.* Consequently, defendants' threatened judicial enforcement would also violate the commerce and supremacy clauses of the Constitution. Count II seeks a permanent injunction enjoining defendants from enforcing the covenant.

Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (jurisdiction over actions arising under any act of Congress regulating commerce or protecting trade in commerce against restraints). Defendants raise numerous grounds for dismissing this action for lack of subject matter jurisdiction. Because we find the issue of state action to be controlling, our discussion will be limited to that ground.

## I. *Plaintiffs' First and Fourteenth Amendment Claims.*

It is well settled that the fourteenth amendment limits only state action. The

first amendment, by incorporation into the fourteenth amendment, also limits state action. Thus, for this court to exercise jurisdiction over plaintiffs' first and fourteenth amendment claims, we must find the required state action. *See* Tribe, *American Constitutional Law* § 18–1. at 1147 (1978). Defendants argue that this court lacks subject matter jurisdiction because state action is lacking. Plaintiffs claim the requisite state action is present because defendants have threatened judicial enforcement of the restrictive covenant in state court.

■ Plaintiffs rely on *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), in which the Supreme Court held that a state court's enforcement of a racially restrictive covenant violates the equal protection clause. Assuming, without deciding, that plaintiffs are correct in contending that *Shelley* is applicable to a nonracially restrictive covenant alleged to violate the first amendment right to free speech,[1] we find that the requisite state action is lacking in this case.

*Shelley* involved two companion cases. In the first case, landowners of property subject to a covenant barring nonwhites from owning property brought a state court action to restrain new black owners from taking possession of the restricted land and to divest them of their title. The trial court found for defendants, but the state supreme court reversed and granted plaintiffs relief. *Id.* at 5–6, 68 S.Ct. at 838–39. Similarly, in the companion case, landowners brought suit against blacks who bought in violation of a racially restrictive covenant. The trial court found for plaintiffs and ordered the black owners to move. The decision was upheld by the state supreme court. *Id.* at 6–7, 68 S.Ct. at 839.

The United States Supreme Court held that the restrictive covenants *standing alone* did not violate the equal protection clause of the fourteenth amendment. *Id.*

at 13, 68 S.Ct. at 842. However, the state court enforcement of the covenants amounted to state action and, consequently, violated the black landowners' fourteenth amendment rights. The court stated:

[T]hese are cases in which the States have made available to such individuals the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners are willing and financially able to acquire and which the grantors are willing to sell.... State action, as that phrase is understood for the purposes of the Fourteenth Amendment, refers to exertions of state power in all forms. And when the effect of that action is to deny rights subject to the protection of the Fourteenth Amendment, it is the obligation of this Court to enforce the constitutional commands.

We hold that in granting judicial enforcement of the restrictive agreements in these cases, the States have denied petitioners the equal protection of the laws and that, therefore, the action of the state courts cannot stand.

*Id.* at 19–20, 68 S.Ct. at 845.

We read *Shelley* as requiring actual judicial enforcement of the covenant before state action may be found. The covenant in this case has not been judicially enforced, nor has a suit been instigated to enforce the covenant. The only action taken in the instant case has been the defendants' threat to sue plaintiffs in state court. It is quite possible that even if a state court action were instituted, the court might refuse to enforce the covenant. Any claim of state action at this point is therefore purely speculative.

■ This state action issue is inextricably intertwined with the "case and controversy" or "ripeness" issue. To adjudicate constitutional issues, concrete legal ques-

---

**1.** The Supreme Court has never addressed the applicability of *Shelley* to other types of restrictive covenants. Consequently, the significance of *Shelley* for residential cases not involving

racial discrimination remains uncertain. *See* Note, *The Rule of Law in Residential Associations*, 99 Harv.L.Rev. 472, 477 & nn. 27–28 (1985).

tions are required. This is as true of declaratory judgments as any other actions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *United Public Workers of America v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). Although there is no precise test for determining in every case whether a sufficient case and controversy exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Golden*, 394 U.S. at 108, 89 S.Ct. at 959 (quoting *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Based on these considerations, we find that there is no sufficient case and controversy to warrant jurisdiction over plaintiffs' first and fourteenth amendment claims.

In the alternative, plaintiffs argue that state action is currently present in this case under the principles set forth in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). In *Marsh*, the Supreme Court held that a company-owned town may not deprive its citizens of the right to free speech. The Court reasoned that the town, although privately owned, had all the attributes of any American town. The Court noted that it had residential buildings, streets, a system of sewers, a sewage disposal plant and a business block. The business block housed several merchants and services and a United States Post Office. The company hired and paid a county sheriff to serve as the town's policeman. The Court also noted that the town and business block were "accessible to and freely used by the public in general in there [was] nothing to distinguish them from any other town and shopping center except the fact that the title to the property belong[ed] to a private corporation." *Id.* at 503, 66 S.Ct. at 277.

The Court refused to find that the corporation's property interest settled the question. *Id.* at 505, 66 S.Ct. at 278. The Court

stated: "Ownership does not always mean absolute dominion. The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." *Id.* at 506, 66 S.Ct. at 278.

Plaintiffs contend that Summercrest is sufficiently like the company-owned town in *Marsh* so as to make that case applicable here. Plaintiffs argue that Summercrest is a formally-organized subdivision under the direction of the Board of Managers of the Summercrest Homes Association and is freely used by the public in general. Plaintiffs also argue that the Board of Managers serves a public function by assessing expenses against homeowners for maintenance, much like a city with the power to tax. Furthermore, the Board has the power to maintain and improve all common areas of the subdivision.

We are not persuaded by plaintiffs' arguments. First, we do not find that Summercrest is sufficiently similar to the company-owned town in *Marsh* to make that case applicable. Summercrest is merely a residential area that lacks the attributes of a regular American town. For example, it does not provide its own police or fire protection, its own schools or its own system for trash collection or sewage disposal, which are functions of a typical municipality. Nor does it have the usual public spaces serving the business needs of its residents. Furthermore, the Board of Managers does not have the substantial powers and rights of the average town's governing body.

Plaintiffs also argue that *Amalgamated Food Employers Union v. Logan Valley Plaza*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), is applicable to the case at bar. In *Logan Valley*, the Court extended *Marsh* to a shopping center, and held that a privately-owned shopping center could not prohibit picketing in its open areas. However, in *Lloyd Corporation v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), the Court carefully re-

stricted its *Logan Valley* holding, stating that the free speech rights of the picketers in *Logan Valley* were protected only because the picketing was directly related to the use to which the shopping center property was being put. 407 U.S. at 563, 92 S.Ct. at 2226. Given this narrow reading of the *Logan Valley* holding, we conclude that *Logan Valley* is inapplicable to the instant case.

## II. *Plaintiffs' Preemption Claims.*

 Plaintiffs' complaint alleges that the defendants' threatened judicial enforcement of the covenant would impede the federal scheme of preemption under the Communications Act of 1934, in violation of the commerce and supremacy clauses. Here again we find the necessary state action lacking.

Under the Supremacy Clause of the Constitution, Article 6, Clause 2, a federal law preempts state law where the state law stands as an obstacle to the accomplishment of the purposes and objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Federal regulations preempt state law in the same manner. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984). A new federal regulation adopted by the Federal Communications Commission implementing the Communications Act provides that only "state and local zoning or other regulations" which differentiate between satellite receiving antennae and other types of antennae are preempted. 51 Fed.Reg. 5520 (1986) (to be codified at 47 C.F.R. § 25.104). It is clear then that in order to bring their preemption claims, plaintiffs must allege a state or local law or ordinance, or at a minimum some equivalent state action, that is preempted by this federal regulation or some provision of the Communications Act. As discussed above, plaintiffs have alleged only the existence of a private covenant that has yet to be judicially enforced. There being no state action or state law to be preempted in this case, we hold that this court lacks subject matter jurisdiction to hear plaintiffs' preemption claims.

IT IS THEREFORE ORDERED that defendants' motion to dismiss this action for lack of subject matter jurisdiction is granted.