[No. B029923. Second Dist., Div. Five. Apr. 10, 1989.]

ROBERT HUNTER et al., Plaintiffs and Respondents, v.
CITY OF WHITTIER, Defendant and Appellant.

COUNSEL

J. Robert Flandrick, City Attorney, Burke, Williams & Sorensen, Scott F. Field and Michael J. Long for Defendant and Appellant.

Countryman & McDaniel and Donald E. Oliver for Plaintiffs and Respondents.

## OPINION

ASHBY, J.—Plaintiffs Robert Hunter and Scott Hunter own homes in a residential zone of the City of Whittier (hereinafter City). In 1985 they installed satellite television receiving antennas, also known as satellite dish antennas or satellite earth stations, on the roofs of their homes. City subsequently enacted an ordinance regulating satellite television receiving antennas in a residential zone, requiring an owner to obtain a conditional use permit. Plaintiffs applied for permits. City officials informed plaintiffs that a conditional use permit would be granted only on conditions that the height of the antennas be reduced to 15 feet above grade (which would require the antennas be placed on the ground, not on the roofs) and that the antennas be screened so as not to be visible from the street or surrounding properties. Plaintiffs exhausted administrative appeals, did not comply with the conditions, and after being threatened with legal proceedings or misdemeanor prosecution, filed the instant action to restrain enforcement of the ordinance and for damages. For themselves and on behalf of a class, they contended the ordinance is invalid under federal law, a 1986 regulation of the Federal

Communications Commission (hereinafter FCC) (47 C.F.R. § 25.104). The FCC order preempts all local regulation of satellite television receiving antennas unless the local law meets specific standards set forth in the FCC order.

The FCC order provides: "State and local zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities are preempted unless such regulations: [¶] (a) *Have a reasonable and clearly defined health, safety or aesthetic objective*; and (b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment. [¶] Regulation of satellite transmitting antennas is preempted in the same manner except that state and local health and safety regulation is not preempted." (47 C.F.R. § 25.104, italics added.)

The trial court granted a preliminary injunction restraining City from enforcing the ordinance. City appeals from the granting of the preliminary injunction.

Plaintiffs' complaint attacked the ordinance, and the conditions imposed on plaintiffs, on several grounds. Plaintiffs contended that neither the ordinance nor any published regulations defined the aesthetic objectives on which conditional use permits for satellite television receiving antennas are granted or denied. They contended that the procedures for obtaining a permit were excessively costly and that compliance with the conditions required by City would be excessively costly and would unreasonably interfere with reception of satellite signals. They also contended the purpose of the ordinance was to protect City's existing cable television franchise.

Since this litigation has reached only the preliminary injunction stage, these issues have not been tried. Nevertheless, both parties urge that we now address the narrow question of law whether the ordinance contains "reasonable and clearly defined health, safety or aesthetic" objectives as required by 47 Code of Federal Regulations section 25.104(a). The trial court opined that the ordinance has no such objectives and that the standards must be "express, not held in the bosom of the city officials." City contends that the ordinance incorporates certain standards which apply to all conditional use permits and that these general standards are sufficient even though not specifically addressed to satellite television receiving antennas. We conclude that the incorporated standards cited by City are too broad to satisfy the FCC order. The FCC has required greater specificity in light of the property owner's federally protected right to receive satellite television signals.

## Background of the FCC Order

The FCC order was prompted by complaints from the satellite television industry that some local regulations of satellite receiving antennas improperly discriminated in favor of other forms of television communication or unreasonably burdened the home dweller's reception of satellite signals. Proponents of federal preemption cited the example of a City of Chicago ordinance which imposed burdensome procedures and did not appear motivated by health or safety concerns or "clearly articulated aesthetic criteria such as screening or offset requirements"; instead, evidence of the history of the Chicago ordinance suggested it was enacted to protect a local cable television franchise. (50 Fed.Reg. 13986, 13987, 13989 (Apr. 9, 1985).) Other types of local ordinances were also attacked by the industry as unreasonable. "Many of these relate to antenna size and bar the use of all but the smallest antenna [e.g., one meter]. Others require set backs or screening, installation only in certain areas or yard locations, high application fees or expensive engineering data, or consent by all affected neighbors in a residential area." (*Id.* at p. 13987.)

Nevertheless, the FCC endorsed the right of local government to regulate satellite antennas for reasonable health, safety and aesthetic objectives. (50 Fed.Reg. at pp. 13988-13990.) "[L]ocal communities have the right to enact ordinances which will protect the aesthetic values of citizens and this Commission should not interfere with this right provided that federal objectives are not being frustrated. Thus, we feel that ordinances requiring certain types of screening or placement should be permissable [*sic*] when applied in a proper context and on an equitable basis to all facilities." (*Id.* at pp. 13989-13990.)

After receiving numerous comments in response to its notice of proposed ruling, the FCC in 1986 issued its report and order adopting 47 Code of Federal Regulations section 25.104. (51 Fed.Reg. 5519 (Feb. 14, 1986).) The FCC concluded that it had the power to preempt local regulations which unduly interfere with national objectives. The commission noted the broad mandate of section 1 of the Communications Act to make communication services available to all people of the United States (47 U.S.C. § 151 (1982)), and more specifically a recent amendment to the Communications Act, creating certain rights to receive unscrambled and unmarketed satellite signals (47 U.S.C. § 605(b) (Supp. III 1985).) These enactments, concluded the FCC, "establish a federal interest in assuring that the right to construct and use antennas to receive satellite delivered signals is not unreasonably restricted by local regulation." (51 Fed.Reg. at p. 5522.)

If a community chooses to enact an ordinance which differentiates between types of antennas, the ordinance is preempted unless it meets both paragraphs (a) and (b) of section 25.104. (51 Fed.Reg. at pp. 5523-5524.)

With respect to paragraph (a) of section 25.104, the FCC declared, "We have retained the use of health, safety and aesthetic objectives but have merely required these to be 'reasonable' and 'clearly defined.' These terms are readily susceptible to application by local authorities and give some flexibility in the application of local regulations to individual locations. To be more specific in a general national policy statement would be inadvisable." (51 Fed.Reg. at p. 5524.)

Additional standards are imposed by paragraph (b) of section 25.104. As explained by the FCC: "In addition to defining the reasonable objective of an ordinance which differentiates in its treatment of antennas, a community is limited in the types of restrictions it can apply. It cannot unreasonably limit or prevent reception by requiring, for example, that a receive-only antenna be screened so that line of sight is obscured. Moreover, an ordinance which discriminates cannot impose size restrictions only on receive-only antennas which would effectively preclude reception. [¶] As a further standard we are requiring that any local restriction which fails to meet our discrimination tests must not impose costs which are excessive in light of the costs of the equipment. Again, in a general policy statement, it is inadvisable to specify what 'excessive' would mean in a particular situation but we are confident that local authorities who are familiar with local situations will be capable of making accurate distinctions. If antenna users are not satisfied with the results of local determinations, it would be within the ability of a court to make legal determinations of reasonableness or excessiveness." (51 Fed.Reg. at p. 5524.)

## City Ordinance

Ordinance No. 2345, enacted in 1985 (prior to the FCC preemption order), amended various provisions of the Whittier Municipal Code to refer to satellite television receiving antennas.

Satellite television receiving antennas, along with flagpoles and amateur radio receiving and transmitting antennas, are a permitted "accessory use" allowed in R zones for the private noncommercial use of the occupant of a residence located upon the lot. (Whittier Mun. Code, § 18.10.020(J).) Limitations on the use of antennas and flagpoles are stated in section 18.10.030(I). Four of these limitations relating to location, height, bulk and bracing are specific, and are not in dispute in this case.[1] Apparently, plaintiffs' installations are not in violation of these limitations.

---

[1] Section 18.10.030: "Limitations on Use. [¶] The regulations set out in this section shall be limitations on, and be applicable to, all uses on R-zoned lots. . . . [¶] I. Antennas and Flagpoles. Flagpoles and antennas, as permitted pursuant to Section 18.10.020(J), shall be permitted to be constructed and maintained only in compliance with the following: [¶] 1. Location.

The fifth limitation is the requirement of a conditional use permit which is in dispute on this appeal. It provides: *"Conditional Use Permit Requirement. No satellite television receiving antenna or amateur radio receiving or transmitting antenna shall be placed or permitted on any property unless a conditional use permit therefor is first obtained pursuant to the provisions of Chapter 18.58."* (Whittier Mun. Code, § 18.10.030(I)(5), italics added.)

Plaintiffs contend that "defendant THE CITY OF WHITTIER has no duly-promulgated ordinance, regulation, or standard setting forth specific aesthetic considerations upon which such [conditional use permit] conditions were based."

City contends that the ordinance incorporates standards relating to conditional use permits generally. The disputed paragraph incorporates chapter 18.58, which provides a procedure for a zoning administrator to hear and determine applications for a "minor conditional use permit," specifically including "conditional use permits for satellite television receiving antenna and amateur radio receiving and transmitting antenna." The zoning administrator is required by section 18.58.030 to "be bound by the standards governing the conduct of the planning commission and the city council with respect to zone variances and conditional use permits as set forth in this code."

The general standards relating to conditional use permits are set forth in section 18.52.040, which provides: "Prerequisites—Burden of proof. [¶] A. The following subsections of this section shall constitute the standards relating to the granting of an application for a conditional use permit. *Where the body hearing such an application finds that all of the standards, as hereinafter set forth, are met by the evidence presented at the hearing, it shall grant the conditional use permit.* The applicant shall have the burden of proof to show, by relevant evidence, the existence of facts which support the conclusion that the standards as set forth in this section are met. [¶] B. *The standards for the granting of a conditional use permit are as follows*: [¶] 1. That the site proposed for the use is adequate in size, shape and topography; and [¶] 2. That the site proposed for the use has sufficient access to streets which are adequate, in width and pavement type, to carry the quantity and

---

Except as expressly hereinafter permitted, no flagpole or antenna may be located in a required yard area nor in an area of a lot between a front lot line of that lot and a dwelling unit located thereon; a flagpole, not in excess of twenty-five feet in height, nor a dimension of more than four inches, may be located in a required front yard area; provided, that the same shall not be placed closer than ten feet of any lot line; and [¶] 2. Height. No flagpole or antenna shall have a height in excess of that permitted by the underlying zone classification for buildings and structures; and [¶] 3. Bulk. No antenna shall have a horizontal dimension in excess of twelve feet; and [¶] 4. Bracing. All flagpoles and antennas shall be self-supporting and shall have no external guys or braces; . . ."

quality of traffic generated by the proposed use; and [¶] 3. *That the proposed use will not unreasonably interfere with the use, possession and enjoyment of surrounding and adjacent properties*; and [¶] 4. *[That] the proposed use will be compatible with the permitted uses of surrounding and adjacent properties*; and [¶] 5. That the use will, as to location, operation and design, be consistent with the general plan, any applicable specific plan, and the Whittier zoning regulations." (Italics added.)

City contends the italicized standards are sufficient to avoid federal preemption.

## TRIAL COURT RULING

At the hearing on the preliminary injunction the trial court stated, "the plaintiff has at least shown a reasonable probability of success at trial in establishing that [the ordinance] does not comply with the exception of the FCC order, since it does not have a clearly defined esthetic object[ive], and it's not clear that it would not impose unreasonable limitations on or prevent reception of satellite-delivered signals by receive-only antennas. [¶] In other words, I think this exception to the preemption meant that it must be—that the objective and the limitations or the standards must be express, not held in the bosom of the city officials.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Of course, another reason for the preliminary injunction is that I think there would be greater harm from not granting the injunction than there is from granting the injunction."

## STANDARD OF REVIEW

■   Ordinarily an appeal from the granting of a preliminary injunction involves a very limited review of the trial court's exercise of discretion concerning two factors: (1) the likelihood that plaintiffs will ultimately prevail and (2) the interim harm plaintiffs will sustain if the preliminary injunction is denied compared to the interim harm defendant will suffer if the injunction is granted pending a final determination of the merits. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286-287 [219 Cal.Rptr. 467, 707 P.2d 840]; *King v. Meese* (1987) 43 Cal.3d 1217, 1227 [240 Cal.Rptr. 829, 743 P.2d 889].)

Occasionally, however, the likelihood of prevailing on the merits depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial. This issue can arise, for example, when it is contended

that an ordinance or statute is unconstitutional on its face and that no factual controversy remains to be tried. If such a question of pure law is presented, it can sometimes be determinative over the other factor, for example, when the defendant shows that the plaintiff's interpretation is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits. (E.g., *Walker* v. *Meehan* (1987) 194 Cal.App.3d 1290, 1304 [240 Cal.Rptr. 171]; *King* v. *Meese, supra,* 43 Cal.3d at p. 1235.) Even where the question of law is not entirely determinative, it may be appropriate for the appellate court to express its opinion in order to clarify or narrow the issues for trial. (E.g., *Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 287-304.)

■ In this case City does not claim that the trial court abused its discretion in weighing the relative hardships on the parties, and City also concedes that the trial court made no final determination whether the zoning administrator's conditions imposed excessive costs upon plaintiffs or unreasonably interfered with plaintiffs' reception of satellite signals. Both parties urge, however, that the issue whether City's ordinance contains reasonable and clearly defined aesthetic objectives is a question of law which we should address in order to clarify the issues for trial. We conclude it is proper to express our views. In our opinion City's ordinance, enacted prior to the FCC preemption order and incorporating only the preexisting general standards for issuance of a conditional use permit, is not sufficiently specific to satisfy the FCC's requirements.

## DISCUSSION

City contends first that the FCC contemplated that local governments could regulate satellite receiving antennas by means of conditional use permits, a well-established local zoning device. The issue in this case, however, is the specificity of the standards by which conditional use permits are granted or denied.

■ City argues that the general standards for granting conditional use permits contained in section 18.52.040(B)(3) and (4) are sufficient for regulating satellite receiving antennas under the FCC order.[2]

■ City correctly points out that as a general rule of zoning law, broad general standards for conditional use permits have been upheld because it would be impossible and undesirable to devise specific standards to cover all

---

[2]"3. That the proposed use will not unreasonably interfere with the use, possession and enjoyment of surrounding and adjacent properties; and [¶] 4. [That] the proposed use will be compatible with the permitted uses of surrounding and adjacent properties." (Whittier Mun. Code, § 18.52.040 (B)(3) and (4).)

conceivable variations of circumstances involving individual properties. (*Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 633-635 [339 P.2d 914]; *Stoddard* v. *Edelman* (1970) 4 Cal.App.3d 544, 548-549 [84 Cal.Rptr. 443]; *Garavatti* v. *Fairfax Planning Com.* (1971) 22 Cal.App.3d 145, 150 [99 Cal.Rptr. 260].)

The issue in those cases, however, was whether those standards were so impermissibly vague as to constitute an unlawful delegation of legislative authority to an administrative body or official. The approach is not the same when the property owner has independent rights which constitute a limitation upon the powers of the legislative body itself to regulate the matter. Thus, for example, when zoning restrictions operate on the property owner's exercise of First Amendment rights, the courts have required greater legislative specificity in order to avoid undue administrative discretion impinging on the owner's rights. (*City of Indio* v. *Arroyo* (1983) 143 Cal.App.3d 151, 159 [191 Cal.Rptr. 565]; *City of Imperial Beach* v. *Escott* (1981) 115 Cal.App.3d 134, 138-139 [171 Cal.Rptr. 197]; *City of Salinas* v. *Ryan Outdoor Advertising, Inc.* (1987) 189 Cal.App.3d 416, 433 [234 Cal.Rptr. 619]; *People* v. *Nadeau* (1986) 182 Cal.App.3d Supp. 1, 7-8 [227 Cal.Rptr. 644].)[3]

In the case of satellite television receiving antennas, the FCC has determined that owners have a federally protected right to receive satellite television signals, and in order to enforce that right the FCC has preempted all local regulations inconsistent with the conditions required by the FCC order. The power of the local legislative body is acknowledged, but limited. The FCC has expressly required that in order for local regulations to avoid federal preemption, they must contain reasonable and clearly defined aesthetic objectives. ▇▇▇ By requiring "clearly defined" objectives in order to avoid federal preemption in the national interest, the FCC has imposed a limitation on local regulators which may require greater specificity than would otherwise be sufficient under local zoning law.

The FCC's discussion makes clear that a community *may* enact reasonable screening and placement standards in order to make satellite television receiving antenna installations aesthetically acceptable. The FCC mentioned that the City of Chicago ordinance lacked "clearly articulated aesthetic criteria such as screening or offset requirements" (50 Fed.Reg. at p. 13989) and the FCC opined "that ordinances requiring certain types of

---

[3] The latter two cases are cited by City, which argues that those cases upheld, in a First Amendment context, standards comparable to City's ordinance in this case. We disagree. The standards were more specific in those cases than here. (*City of Salinas* v. *Ryan Outdoor Advertising, Inc., supra* [regulation of "signs characterizing a person or object"]; *People* v. *Nadeau, supra* [standards for regulating adult book store construed to relate only to the external appearance of the building in order to render ordinance constitutional].)

screening or placement should be permissable [*sic*] when applied in a proper context and on an equitable basis to all facilities." (*Id.* at pp. 13989-13990.) Such standards must be "clearly defined" under 47 Code of Federal Regulations section 25.104(a), and must also be reasonable under section 25.104(b) so as to avoid impinging unduly on the owner's federally protected right to receive satellite television signals.

City's ordinance in this case, adopted before the FCC order, does not enact specific screening or placement requirements for satellite television receiving antennas. These requirements were determined on an ad hoc basis by building inspectors or the zoning administrator. The only apparent legislative criteria to guide these officials in this determination were "that the proposed use will not unreasonably interfere with the use, possession and enjoyment of surrounding and adjacent properties" and that "the proposed use will be compatible with the permitted uses of surrounding and adjacent properties." We conclude that although such broad standards may be sufficient for other zoning determinations, they give unduly broad discretion to administrative officials in light of the FCC's requirements that aesthetic objectives must be clearly defined and must take into account the owner's federal rights.

To date relatively little case law has developed construing the FCC's 1986 preemption order. Cases arising under prior law are distinguishable and of very limited value in construing the detailed language of the 1986 preemption order.[4] Many of the more recent cases merely touch upon the FCC preemption order and provide no detailed analysis.[5] The most comprehensive analysis we have found is *Van Meter* v. *Township of Maplewood* (D.N.J. 1988) 696 F.Supp. 1024. In that case a municipal zoning ordinance contained detailed screening and setback requirements for satellite dish antennas. The screening requirements made plain the municipality's aesthetic purpose (*id.* at p. 1029) but the court held the ordinance was preempted by paragraph (b) of the FCC order, because the height and screening requirements imposed unreasonable and excessively costly bur-

---

[4]*Schroeder* v. *Municipal Court* (1977) 73 Cal.App.3d 841, 844-849 [141 Cal.Rptr. 85] [prior to specific FCC preemption; free speech theory]; *Conrad* v. *Dunn* (1979) 92 Cal.App.3d 236, 238 [154 Cal.Rptr. 726] [same, following *Schroeder*]; *Bulchis* v. *City of Edmonds* (W.D.Wash. 1987) 671 F.Supp. 1270, 1272-1274 [prior federal preemption of radio antenna height].

[5]*Minars* v. *Rose* (1986) 123 A.D.2d 766 [507 N.Y.S.2d 241, 242] [FCC order adopted after trial, remanded to trial court]; *L.I.M.A. Partners* v. *Borough of Northvale* (1987) 219 N.J.Super. 512 [530 A.2d 839, 843-844] [same]; *Brophy* v. *Town of Castine* (Me. 1987) 534 A.2d 663, 665 [no evidence presented that ordinance differentiated between different types of antennas so as to invoke FCC order]; *Breeling* v. *Churchill* (1988) 228 Neb. 596 [423 N.W.2d 469, 471] [restrictive covenant did not differentiate between types of antennas]; *Ross* v. *Hatfield* (D.Kan. 1986) 640 F.Supp. 708, 712 [private restrictive covenant].

dens on the reception of signals (*id.* at pp. 1030-1031). The court's discussion of the variance procedure in that case supports our conclusion that in the instant case the standards for issuance of a conditional use permit are too vague to satisfy paragraph (a) of the FCC's order. In *Van Meter* the municipality argued that any homeowner who could not achieve reception within the constraints imposed by the ordinance could apply for a zoning variance. The court rejected the argument that the ordinance could be sustained by this approach. First, the standard for granting a zoning variance was "the public good" which was "objectionable because it does not include reasonable satellite television signal reception as a factor in the evaluation." (*Id.* at p. 1031.) Second, such a standard delegated authority to the zoning board virtually "without bounds," with no standards for antenna placement to guide or review the board's decision. (*Ibid.*) Finally, the variance procedure was expensive. (*Id.* at p. 1032.)

The City of Whittier ordinance suffers from a similar generality in the standards for issuance of a conditional use permit, which provide no meaningful legislative standard for the zoning administrator to determine placement and screening requirements and no recognition of the owner's right to receive signals as a factor to be evaluated.[6]

The order granting preliminary injunction is affirmed.

Lucas, P. J., and Kennard, J.,* concurred.

---

[6] City cites *Bulchis* v. *City of Edmonds, supra,* 671 F.Supp. 1270, 1274, for the fact that the court there held the ordinance to be invalid as applied but not invalid on its face. The municipality in that case had argued that the owner's federal rights to amateur radio transmission and reception were recognized by an exception in the ordinance for "public necessity." The court was willing to consider that the ordinance could, on its face, be given such a construction, but then rejected the argument because it was not supported by the record factually. *Bulchis* does not support City's position in the instant case, since City points to no ordinance language which recognizes the owner's federal right to receive signals.

* Assigned by the Chairperson of the Judicial Council.