**Wayne and Judie JOHNSON, Plaintiffs,**

v.

**CITY OF PLEASANTON, Defendant.**

**No. C90–0122 DLJ.**

United States District Court,
N.D. California.

June 6, 1991.

---

Daniel C. Rooney, Sole Practitioner, Daniel C. Rooney Law Offices, Redwood City, Cal., for plaintiffs Wayne and Judie Johnson.

Michael H. Roush, Dennis C. Beougher, Asst. City Atty., Pleasanton, Cal., for defendant City of Pleasanton.

## ORDER

JENSEN, District Judge.

On May 8, 1991, this Court heard plaintiffs' motions for summary adjudication of claims and involuntary dismissal of defen-

dant's counterclaim, and defendant's motion for summary adjudication of claim. Daniel C. Rooney appeared on behalf of plaintiffs Wayne and Judie Johnson. Dennis C. Beougher appeared on behalf of defendant City of Pleasanton. Having considered the papers submitted, the arguments of counsel, and the applicable law, the Court denies all summary judgment motions against the original movant, but grants such motions in favor of the non-movant, and grants plaintiffs' motion for involuntary dismissal for the following reasons.

## I. BACKGROUND FACTS [1]

This is an action challenging an ordinance of the City of Pleasanton (the "City"), Chapter 18.112 of the Pleasanton Municipal Code ("Satellite Earth Station Development Standards"), regulating satellite receive-only antennas within municipal boundaries.[2] Following a series of applications to and proceedings before various City bodies, plaintiffs Wayne and Judie Johnson were denied a variance for their antenna. Plaintiffs were subsequently informed on several occasions that they must bring their antenna into conformity with the provisions of chapter 18.112, and that failure to do so would result in imposition of penalties.

On January 12, 1990, the Johnsons filed the present action seeking declaratory and injunctive relief, as well as damages, on the grounds of federal preemption and for alleged violations of plaintiffs' constitutional rights under the First and Fourteenth Amendments. On February 15, 1990, the City counterclaimed against plaintiffs, seeking damages according to the civil penalties applicable to violations of chapter 18.112 and, therefore, effectively seeking enforcement of the ordinance against the Johnsons.

In an Order filed November 26, 1990, this Court held that the ordinance was preempted by regulations of the Federal Communications Commission ("FCC").[3] *See Johnson v. City of Pleasanton*, Civ. 90–0122–DLJ Order (N.D.Cal. Nov. 26, 1990) (Ezra, J.) [hereinafter Order of November 26, 1990]. Specifically, the Court found that the ordinance differentiated between satellite receive-only antennas and other types of antennas in four different respects. The Court also found that although the City's ordinance had "a reasonable and clearly defined health, safety or aesthetic objective" for the distinction, *see* 47 C.F.R. § 25.104 (1990), the City had failed to meet its burden on summary judgment of contesting plaintiffs' showing that the ordinance placed such unreasonable limitations on their use of the antenna as to effectively prevent their reception of satellite delivered signals. *See* Order of November 26, 1990, at 9. Because the ordinance failed to satisfy *both* prongs of section 25.104, the Court concluded that the ordinance was preempted.

Plaintiffs' now move for summary adjudication of their claims that the ordinance

---

**1.** The underlying facts of the present case are set forth more fully in this Court's prior order and are expressly incorporated herein. *See Johnson v. City of Pleasanton*, Civ. 90–0122–DLJ Order at 1–3 (N.D.Cal. Nov. 26, 1990) (Ezra, J.).

**2.** Some of the regulations imposed on satellite receive-only antennas located in residential areas include: (1) no roof placement of such antennas; (2) antennas may not be placed in the front yard, or located in a side yard facing the street of a corner lot unless totally screened from view from the street; (3) maximum height is ten feet; (4) any antenna reaching higher than any fence separating the antenna from adjacent properties must be screened and set back five feet from the property line, and if screening is impossible, to be set back fifteen feet from the adjoining property line; and (5) such antennas must be an acceptable earth-tone color unless completely screened from adjoining properties or the city's rights-of-way. *See* Pleasanton Mun.Code § 18.112.010.

**3.** The Court examined the City's ordinance under the March 1985 order of the FCC, which stated that state or local regulations differentiating between satellite receive-only antennas and other antennas are preempted unless such regulations:

(a) Have a reasonable and clearly defined health, safety or aesthetic objective; and
(b) Do not operate to impose unreasonable limitations on, or prevent, reception of satellite delivered signals by receive-only antennas or to impose costs on the users of such antennas that are excessive in light of the purchase and installation cost of the equipment.

*See* 47 C.F.R. § 25.104 (1990).

deprives them of their constitutional rights as protected by the First and Fourteenth Amendments, and that enforcement of the ordinance violates plaintiffs' rights as protected by 42 U.S.C. § 1983. Plaintiffs' also move for involuntary dismissal of the City's counterclaim, contending that the City's cause of action seeking damages and enforcement of the ordinance has been mooted by this Court's finding of preemption. Defendant in turn seeks summary judgment that portions of the ordinance may be severed from those related to this Court's finding of preemption and that such severed portions may continue to be enforced.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Recognizing that summary judgment motions can contribute significantly to the resolution of litigation when there are no factual issues, the Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e) (emphasis added) and citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317,

106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## III. DISCUSSION

*A. First Amendment claims.*

Plaintiffs contend that the provisions of chapter 18.112 of the Pleasanton Municipal Code violate their First Amendment right to freedom of expression as implementation of the ordinance denies them of their constitutional right of access to the television programming of their choice. Defendant in opposition argues that the ordinance sets forth a reasonable time, place, and manner restriction which does not unconstitutionally infringe on plaintiffs' receipt of such programming.[4]

Plaintiffs cite the Supreme Court's decision in *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), for the proposition that the First Amendment protects an individual's right to receive a wide variety of television programming.[5] In language quoted by plaintiffs, the Court stated:

> It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail.... It is the right of the public to receive *suitable* access to social, political, aesthetic, moral and other ideas and expressions which is crucial here. That right may not be constitutionally abridged.

*Id.* at 390, 89 S.Ct. at 1806–07 (emphasis added). Thus, although plaintiffs have access to 37 channels through cable transmission and 15 channels through ordinary network broadcast, they effectively contend that such access is not sufficiently "suitable" in light of the superior quality and quantity of reception available through a satellite antenna (236 video channels, including U.S. and Canadian programs otherwise unavailable in the Pleasanton area, as well as earlier reception of programs airing in other time zones).

While the Court readily acknowledges both the First Amendment and the Federal Communications Act goals in furthering the public interest in free access to information, it finds no absolute and all-encompassing right to the television programming of choice. Indeed, plaintiffs agree that they do not have such an absolute right of access. At the hearing before this Court, plaintiffs conceded that they have neither the absolute right to construct and use any antenna they choose, nor is there an absolute right to some minimum number of satellite programs which are feasibly accessible from their backyard. Instead, as acknowledged by the FCC in its regulation providing for preemption in certain cases, there is an anticipated balancing of the local community's interest against that of the individual antenna owner.

Moreover, the evidence before the Court establishes that there are some twenty other satellite receive-only antennas already approved and placed in the Pleasanton area, yet plaintiffs are the only ones who are apparently unable to receive a "suitable" number of programs. Thus plaintiffs effectively request that this Court deem as unconstitutional an ordinance which is an otherwise valid exercise of a municipality's police power because it allegedly infringes on an individual's First Amendment inter-

**4.** Defendant also argues that, because plaintiffs must pay in order to receive such programming, the speech at issue here should be deemed "commercial speech" and therefore must be reviewed under a lessened standard of judicial scrutiny. However, as plaintiffs readily point out, defendant's cited authority, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), upheld regulation of advertising by a public utility against a First Amendment challenge.

In the present case, the only speech which is effectively being "regulated" is that being broadcast via satellite, and there has been no showing that the content of that speech is commercial. Indeed, simply because an individual must pay to receive a newspaper would not seem to mandate the conclusion that the news or speech printed therein is of course commercial. The Court is therefore unpersuaded by defendant's characterization of the speech issues in the present case as "commercial."

**5.** *Red Lion* upheld the FCC's right under the fairness doctrine and its own regulations to require that public issues be discussed on television and radio broadcast stations, and that each side be given fair coverage, including, as was the situation in *Red Lion*, public figures who are the subject of personal attacks. Thus the Court rejected the broadcasters' contentions that their right to freedom of speech entitled them to "use their [FCC] allotted frequencies continuously to broadcast whatever they choose, and to exclude whomever they choose from ever using that frequency." *Id.* 395 U.S. at 386, 89 S.Ct. at 1804.

The Court traced the history of federal licensing of certain frequencies in order to ensure that broadcasts would not "talk over" over one another and effectively deny the public's interest in receiving meaningful broadcast programs. In light of this interest, "equal time" for opposing views or persons was viewed as essential to promoting that meaningful dialogue. *Id.* at 392, 89 S.Ct. at 1807–08.

Thus, while *Red Lion* establishes a policy favoring public access to meaningful broadcasts, it does not commensurately stand for an absolute right to receive *all* broadcasts.

ests in a single case of application. Moreover, as is discussed *infra*, part of this "total" deprivation is attributable at least in part to the configuration of plaintiffs' backyard, where the location of their pool prohibits compliance with the setback requirements of the ordinance.

Although a government "has considerable latitude in regulating property right in ways that may adversely affect the owners," *Hodel v. Irving*, 481 U.S. 704, 107 S.Ct. 2076, 2082, 95 L.Ed.2d 668 (1987), and despite the several contentions listed above, plaintiffs nonetheless contend that the ordinance, while facially valid against a First Amendment challenge, effects a total deprivation of their use of a satellite antenna—or, more specifically, the satellite antenna of their choice—and therefore unconstitutionally abridges their First Amendment rights. Therefore the Court proceeds to analyze the ordinance under the traditional time, place, and manner standards applicable to government regulations having an effect on speech.

### 1. Content–neutral state regulations.

■ Content-neutral statutes regulating the time, place, and manner of expression will be upheld against a First Amendment challenge so long as they further a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986).[6] This Court finds that the ordinance itself is "content-neutral" as it does not distinguish between types of speech or its content but merely distinguishes between the size of antennas

and their location on properties within municipal limits. Significantly, the ordinance has not been shown or even alleged to be related to the suppression of expression, *see United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), or to favoring expression of certain view over others, *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), nor does it seek to ban satellite receive-only antennas altogether. *Renton*, 106 S.Ct. at 928. Thus the ordinance is clearly content-neutral in both its language and application.

### 2. Substantial governmental interest.

"The power of local governments to zone and control land use is … broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life." *Schad v. Mt. Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981) (Blackmun, J., concurring). This Court has already found that the ordinance seeks to promote reasonable and clearly defined aesthetic and safety objectives. "It is well settled that the state may legitimately exercise its police power to advance [a]esthetic values," *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984), and clearly the present ordinance seeks to advance just such values. As the Supreme Court in *Red Lion* noted that the time and decibel levels of sound trucks may be regulated in light of their increased loudness, and thus a person running such trucks or using a loudspeaker does not have a First Amendment right to

---

**6.** Where the forum is not a traditional or designated site for public communication, a time, place, and manner regulation will be upheld so long as it is reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). Arguably, the present case refers to such a forum as it is the right of private individuals seeking to receive information in their own homes which plaintiffs contend is being unconstitutionally limited. Moreover, a central purpose of the ordinance is to limit the visual impact of the satellite antennas on private indi-

viduals living on adjacent properties, again not a traditional or designated forum for public communication. Indeed, even the satellite broadcasts themselves would probably not be deemed a public forum. *See DeYoung v. Patten*, 898 F.2d 628 (8th Cir.1990) (public television station is not "public forum" for purposes of First Amendment). As the present ordinance clearly does not make any distinctions on the basis of the content of speech, nor on a facial reading does it even have any apparent effect on speech whatsoever, the ordinance would be upheld under a *Perry* analysis against a First Amendment challenge.

be heard at all times and at all levels so "that [he] drowns out civilized private speech," *see Red Lion,* 395 U.S. at 387, 89 S.Ct. at 1805, so the "expression" of the satellite antenna may be repressed from imposing its visual self on neighbors for aesthetic reasons.

The Supreme Court has observed, "a city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *Renton,* 106 S.Ct. at 930 (quoting *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)). The concerns of both visual irritation and a potential decrease in property values and community appraisal resulting from such unsightly objects delineate secondary effects supporting an upholding of the ordinance. *See* Order of November 26, 1990, at 5 (quoting City's staff report noting that satellite antennas "tend to be unsightly" and "are often indiscriminately installed on existing buildings" and thus "[e]legant buildings can be made to look trashy by their presence on rooftops"). In addition, such antennas pose a serious safety threat in their susceptibility to "'severe wind loadings, necessitating careful attention to their installation in order to avoid injury to persons and property.'" *See* Order of November 26, 1990, at 5 (quoting a City staff report cited in Defendant's Memorandum in Opposition at exh. 1).

Based on the foregoing, the Court finds that the ordinance is sufficiently related to furtherance of a substantial government interest to withstand a First Amendment challenge.

3. **Alternative channels of communication.**

■ The First Amendment does not require that the most efficient avenue of expression be available. *Monterey County Democratic Cent. Comm. v. United States*

*Postal Serv.,* 812 F.2d 1194 (9th Cir.1987). Plaintiffs maintain that the provisions of the ordinance, as enforced, "operates to totally deprive plaintiffs of their right of access to satellite television programming," *see* Plaintiffs' Memorandum of Points and Authorities in Support at 6:20–21 (filed Apr. 10, 1991), and therefore the availability of alternative sources to information also contained in the desired satellite communications is irrelevant. The only federal authority plaintiffs cite for this First Amendment requirement is *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), holding that an absolute ban on a licensed pharmacist's advertising the prices of prescription drugs violated the First Amendment. In a footnote there, the Court responded to one of the dissent's contentions by stating "[w]e are aware of no general principle that freedom of speech may be abridged when the speaker's listeners could come by his message by some other means.... Nor have we recognized any such limitation on the independent right of the listener to receive the information sought to be communicated." *Id.* at 757 n. 15, 96 S.Ct. at 1823 n. 15. While the Supreme Court's supplemental language indicates that availability of alternative sources does not create a *carte blanche* for interference through regulation, it also does not mandate the conclusion that a court may not consider the availability of alternative means in upholding a regulation affecting speech.

Moreover, this Court is not persuaded that the ordinance creates an absolute ban on plaintiffs' right to receive satellite programming. Plaintiffs cite no authority or evidence for this proposition, but apparently refer to evidence supporting this Court's prior finding that the ordinance placed unreasonable limitations on plaintiffs' use of their antenna.[7] First of all, part of plain-

---

7. Specifically, plaintiffs submitted the declaration of Harry R. Harp, a satellite earth station communications consultant and satellite antenna systems installer by professions. Harp stated that if no obstacles existed between the satellites and the antenna, "the minimum height operation of the Johnson dish would be 14 feet to the top of the dish," and that "[b]ecause of the proximity of the dish to the rear of the house, another ten inches must be added to compensate for the height of the roof eve line." *See* Order of November 26, 1990, at 8 (quoting Harp declaration at 5–6).

tiffs' apparent inability to comply with the set-back requirements of the ordinance is the placement of their pool in the backyard. *See* Order of November 26, 1990, at 9 (quoting Johnson declaration at 3–4). Clearly plaintiffs have a right to develop their property as they see fit so long as such development complies with applicable zoning and building regulations. If their choice to install or retain a pool effectively forecloses their construction of a satellite antenna according to the applicable provisions, then their own decision regarding the pool has effectively foreclosed their right to have a satellite which complies with the City's ordinances.

In like manner, there is a potential basis for finding that compliance with provisions of chapter 18.112 with regard to plaintiffs' current antenna may be readily made. For example, defendant has submitted the declaration of Ron Kane, an Electrical Engineer at the Lawrence Livermore National Laboratory, stating that plaintiffs could comply with the landscaping or screening requirements of the ordinance on the north and west boundaries of their property without creating an unreasonable interference with the antenna's reception. *See* Declaration of Ron Kane ¶ 8 (filed Apr. 11, 1991).[8]

Thus, again, while this Court concluded in its prior Order that the ordinance placed unreasonable limitations on the use of a satellite antenna within the meaning of 47 C.F.R. § 25.104, the Court is not persuaded that the ordinance clearly precludes all use of the Johnsons' antenna to receive satellite signals.[9]

Plaintiffs contend that the available alternatives permitting access to 37 channels through cable programming and 15 channels through ordinary network broadcast do not sufficiently accommodate for the superior quality and quantity of reception through a satellite antenna of at least 236 video channels. While the Court acknowledges that the range of programming which may be picked up through satellite transmissions is indeed remarkable, this Court is not persuaded that plaintiffs have established a First Amendment right to receive maximum programming according to their own terms rather than within the guidelines of facially valid municipal regulations.[10] As set forth at note 9, the Court questions whether a different antenna—such as a smaller one—could be placed on plaintiffs' property in such a way as to permit some reception beyond that avail-

Plaintiffs also submitted the declaration of plaintiff Wayne Johnson, who stated, "It is impossible to comply with the fifteen foot set back requirement of the ordinance because of the proximity of my backyard swimming pool." *Id.* at 9 (quoting Johnson declaration at 3–4). Because plaintiffs' raised a legitimate objection to the admissibility of the single defense declaration set forth in opposition to plaintiffs' motion, Judge Ezra found that defendant had failed to meet its burden on summary judgment of " 'produc[ing] significant probative evidence tending to support its legal theory.' " *Id.* (quoting *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979)).

8. Although this declaration was submitted in support of defendant's motion for summary adjudication of a claim, the Court finds this declaration to be relevant to the present inquiry. Thus plaintiffs' objections that such testimony is irrelevant to challenge this Court's prior finding of preemption as well as rendered irrelevant by defendant's failure to plead severability of claims is of no merit with respect to its use here.

9. Significantly, there has been no showing that a different satellite antenna could not produce a suitable level of reception. Recognizing the pace of technological advancement in such areas as broadcasting and telecommunications equipment, the Court is unwilling to find that plaintiffs would necessarily suffer a total and immediate deprivation of all satellite programming by enforcement of the ordinance against antenna of comparable value to the one they presently seek to use.

10. Indeed, some of the exclusive benefits available through satellite programming are hardly sufficient to constitute grounds for a First Amendment right to receive the broadcasting of one's choice. For example, the ability to receive certain programs one to three hours earlier than other residents of the Pacific Time Zone hardly seems a sufficient basis for deeming an ordinance like chapter 18.112 invalid on First Amendment grounds. Moreover, not only are Chicago Bears' games likely to be available at other venues, but it would not seem that people have a constitutional right to see the football games of their choice. (Indeed, such arguments support defendant's conclusion that the present challenge should be analyzed under the standards applicable to commercial speech.)

able through cable programming while being in compliance with the ordinance. In apparent anticipation of this query, defendant has submitted the declaration of Jerry Iserson, Zoning Administrator for the City, stating that over twenty satellite receive-only antennas have been erected in the City of Pleasanton. While plaintiffs object to this declaration on the grounds of relevance and lack of foundation as there is not evidence that such satellites comply with the terms of the ordinance, the Court finds that such declaration is relevant in countering plaintiffs' assertion that the ordinance effects a total deprivation of access to satellite programming. As to plaintiffs' objection to lack of foundation, the Court finds that there may well be a presumption that such antennas are in compliance in light of plaintiffs' characterization of defendant's alacrity in pursuing owners of non-compliant satellite antennas.

Based on the foregoing, the Court finds that plaintiffs have failed to establish that the ordinance operates a total deprivation of plaintiffs' First Amendment rights by limiting plaintiffs' access to satellite programming using their current antenna, much less that there would be a commensurate deprivation with respect to any alternative satellite antenna. In addition, no party disputes that the ordinance does not in any way limit plaintiffs' access to alternative means of communication, *i.e.*, cable and traditional television broadcasting.

### 4. Conclusion.

■ In sum, the Court finds that the City's ordinance regulating satellite receive-only antennas is facially constitutional, and that it is a valid exercise of the City's police power by which speech is only incidentally involved. Plaintiffs have themselves conceded that the First Amendment does not entitle them to construct any antenna they choose, nor is there an absolute right to some minimum number of satellite programs which may be technically accessible. Moreover, their contention that the ordinance as applied to them—and only them—totally deprives them of the desired programming through use of the antenna of their choice is seriously weakened by the

apparent satisfaction of twenty other satellite antenna owners in the Pleasanton area, as well as by the fact that plaintiffs' compliance with the ordinance is defeated by the configuration of their own backyard, *i.e.*, their pool. Based on the foregoing, this Court finds that the Pleasanton ordinance withstands a First Amendment challenge. Plaintiffs' motion for summary adjudication of this claim for relief will therefore be denied. Moreover, as the Court finds that there are no genuine issues of material fact and that this claim for relief may be determined as a matter of law, the Court grants summary adjudication on this claim for relief in favor of defendant pursuant to Federal Rule of Civil Procedure 56(d).

### B. Fourteenth Amendment claim.

Plaintiffs contend that because access to the television programming of their choice is protected by the First Amendment, this Court's prior finding that the ordinance discriminates between receive-only antennas and other antennas demonstrates that the ordinance creates an impermissible classification between antenna owners in violation of plaintiffs' rights to equal protection of the laws. Moreover, as the classification interferes with the exercise of a fundamental right, *i.e.*, freedom of expression, the ordinance may be upheld only upon a showing that it is necessary to promote a compelling government interest. Defendant contends that chapter 18.112, like other land use regulations, is more properly reviewed as whether it is rationally related to a legitimate state interest.

■ As this Court has already concluded that plaintiffs do not have a First Amendment right of access to the television programming of their choice, the Court finds that the proper standard of review under plaintiffs' equal protection claim is whether the ordinance is reasonably related to a legitimate state interest. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520

(1976).[11] The Court has already found that the aesthetic and safety goals of the ordinance constitute a substantial government interest, and the Court finds that the provisions of chapter 18.112 are reasonably related to achieve those goals. Indeed, even the FCC, the agency entrusted with enforcement of the FCA, anticipated that there would in fact be local differentiations between satellite antennas and the more conventional kind, and that such different treatment would not be preempted so long as the local or state government had reasonable and clearly defined health, safety, or aesthetic objectives for such distinction, and so long as the differentiation did not unreasonably limit reception of satellite signals. *See* 47 C.F.R. § 25.104 (1990).

Therefore plaintiffs' motion for summary adjudication of its claim for relief under the Fourteenth Amendment will be denied. Moreover, as this issue constitutes a matter of law rather than one of fact, the Court finds that summary judgment should be granted in favor of defendant on this claim for relief pursuant to Federal Rule of Civil Procedure 56(d).

## C. Claims under 42 U.S.C. § 1983.

Plaintiffs contend that chapter 18.112 entitles them to sue defendant under section 1983 on two grounds: (1) the ordinance violates their constitutional rights under the First and Fourteenth Amendments; and (2) the ordinance deprives plaintiffs of their rights, privileges, and immunities under 47 U.S.C. § 605(b) and 47 C.F.R. § 25.-104. Defendant contends that plaintiffs have failed to establish they are entitled to a right protected by either the First or Fourteenth Amendments, and that they cannot establish an implied right under the cited statutory and regulatory provisions which provides a remedy for plaintiffs under section 1983. As this Court has previously examined the merits of plaintiffs'

claims under the First and Fourteenth Amendments and found that they fail, the present analysis focuses on plaintiffs' contention that 47 U.S.C. § 605(b) and 47 C.F.R. § 25.104 entitle them to seek relief under section 1983.

1. The statutory and regulatory background.

The Cable Communications Policy Act of 1984 (the "Cable Act") was passed in response to the burgeoning cable television market and technology, and sought "to assure that the exploding market for cable television technology provides the widest possible diversity of information services to the public." *Van Meter v. Township of Maplewood*, 696 F.Supp. 1024, 1028 (D.N.J. 1988) (citing House Committee on Energy and Commerce, Cable Communications Policy Act of 1984, H.R.Rep. No. 89–934, 98th Cong., 2d Sess. 19, *reprinted in part in* 1984 U.S.Code Cong. & Admin.News 4655, 4656). A related issue was the significant increase in the number of consumer-owned satellite antennas across the United States as the ability to benefit from unregulated access to satellite programming became more widely known. *See* Cong.Rec. S14,-285 (Oct. 11, 1984) (statement of Sen. Packwood), *reprinted in* 1984 U.S.Code Cong. & Admin.News 4742, 4745.

In view of both these factors, Congress enacted section 5 of the Cable Act, redesignating the already existing prohibitions against unauthorized publication or use of wire or radio communications in subsection (a), and adding at subsection (b) the following specific exclusions:

The provisions of subsection (a) of this section shall not apply to the interception or receipt by any *individual* ... of any satellite cable programming *for private viewing* if—

---

11. To the extent that denial of the variance to construct the satellite antenna constitutes a "taking" within the meaning of the Fifth Amendment, the ordinance does not violate the standard of review applicable to land use regulations, which will be upheld so long as they substantially advance a legitimate state interest.

*Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). For the reasons discussed *infra*, the ordinance seeks to accomplish a legitimate state interest in supporting aesthetic and safety goals, and the provisions of the ordinance are sufficiently tailored to substantially advance the City's interests.

(1) the programming involved is not encrypted [or scrambled to prevent unauthorized reception]; and

(2)(A) a marketing system is not established ... or

(B) a marketing system described in subparagraph (A) is established and the individuals receiving such programming ha[ve] obtained authorization for private viewing under that system.

*See* 47 U.S.C. § 605(b) (emphases added).[12] "Satellite cable programming" is defined as "video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers," *id.* § 605(d)(1), and "private viewing" is defined as "viewing for *private use* in an *individual's dwelling* unit by means of equipment, owned or operated by such *individual*, capable of receiving satellite cable programming directly from a satellite." *Id.* § 605(d)(4) (emphases added).

In partial reliance on the exceptions of subsection (b), the FCC, the agency responsible for implementing and enforcing the intent of Congress, adopted its Order permitting the preemption of local regulations found to interfere unnecessarily with an individual's reception of satellite programming. In its published Report and Order, the Commission stated as follows:

In our *Notice* we concluded that we had the authority to preempt non-federal regulations which stood as obstacles to the accomplishment of federal objectives. We determined that the broad mandate of Section 1 of the [FCA], to make communications services available to all people of the United States and the numerous powers granted by Title III of the [FCA] ... establish the existence of a congressional objective in this area. More specifically, *the recent amend-*

*ment to the Communications Act,* 47 U.S.C. [605], *creates certain rights to receive unscrambled and unmarketed satellite signals. These statutory provisions establish a federal interest in assuring that the right to construct and use antennas to receive satellite delivered signals is not unreasonably restricted by local regulation.*

Report and Order, *Common Carrier Services; Preemption of Local Zoning and Other Regulation of Receive–Only Satellite Earth Stations,* 51 Fed.Reg. 5519, 5522 ¶ 23 (Feb. 14, 1986) [hereinafter Notice and Order] (emphases added). Thus the Commission concluded that section 605 had created a federal interest which required federal preemption in order to preserve that interest from undue interference by state and local governments.

2. Application under 42 U.S.C. § 1983.

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution" or federal laws under the color of state law. *See* 42 U.S.C. § 1983; *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).[13] Plaintiffs concede that they are not claiming that *any* intrusion on satellite reception constitutes a violation of section of 1983, but maintain instead that whenever the City fails its burden under section 25.104—*i.e.,* the ordinance imposes an "unreasonable limitation" or costs on a satellite antenna owner—then a section 1983 cause of action will lie. Thus this Court looks to whether plaintiffs have been deprived of a right, privilege, or immunity within the meaning of section 1983 by virtue of the ordinance's preemption.

*a. The Van Meter decision.*

One district court has already determined that individual satellite receive-only

---

**12.** Defendant apparently contends that the subject provision, section 605(b), is more properly addressed under the Satellite Home Viewer Act of 1988 ("Satellite Viewer Act"), 47 U.S.C. § 605(a)–(f), rather than the Cable Communications Policy Act of 1984, as plaintiffs contend. However, while the Satellite Viewer Act amended much of section 605, it made no amendments whatsoever to subsection (b), the focus of the

present motion. *See* 47 U.S.C.A. § 605, at 361–62 (Supp.1990) ("Historical and Statutory Notes").

**13.** Section 1988 of that same title permits the recovery of attorneys' fees in actions brought under section 1983. *See* 42 U.S.C. § 1988.

antenna owners like the present plaintiffs have a cause of action under section 1983 by virtue of the rights conferred under 47 U.S.C. § 605(b) and 47 C.F.R. § 25.104. *Van Meter v. Township of Maplewood*, 696 F.Supp. 1024, 1027 (D.N.J.1988). However, this Court is neither bound nor persuaded by this resolution [14] as the court in *Van Meter* did not conduct any type of "rights" analysis in reaching its conclusion, but merely stated as follows:

> Congress legalized the reception of authorized or unencrypted satellite television signals under the Cable Communications Policy Act of 1984 ..., and the FCC, in turn, issued the Order to minimize interference with satellite television reception. [47 C.F.R. § 25.104] This permits plaintiffs to bring a [s]ection 1983 action for interference with this federal scheme.

*Id.* (citations omitted). In contrast, this Court finds that the present case warrants a closer examination as to whether there is a clear basis for concluding that a satellite antenna owner has a cause of action against a municipality under section 1983 for unreasonable regulatory interference with his or her reception of satellite signals.

### b. Cognizable rights under section 1983.

In determining whether a federal statute creates a cause of action under section 1983, this Court applies a two-step inquiry: (1) has Congress foreclosed a remedy under section 1983 in the enactment itself; and (2) does the statute create the kind of "rights, privileges or immunities" enforceable under section 1983. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 19, 101

S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981). As the parties agree that the statutory scheme under the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151 *et seq.* does not preclude the possibility of private enforcement under section 1983, the Court's analysis focuses on the second prong of the inquiry.

The parties, however, disagree as to what test should be applied in determining whether section 605(b) in and of itself creates a right enforceable under section 1983. Plaintiffs contend that the proper inquiry is that under *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), which looks at several factors in determining whether a right conferred by statute may be enforced under section 1983: (1) did Congress intend that the subject provision benefit " 'the putative plaintiff' "; (2) if so, does the provision create a binding obligation on a governmental unit rather than merely a " 'congressional preference' "; and (3) is the interest asserted sufficiently clear that it may be judicially enforced. *Id.* 110 S.Ct. at 2517 (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 448, 107 L.Ed.2d 420, and *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)).

Defendant, in contrast, contends that this case presents a situation of implying a private right of action from a particular statute, which is a different inquiry altogether. *Wilder*, 110 S.Ct. at 2517 n. 9. Thus, in the Ninth Circuit, a court applies the four-factor test in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether Congress in fact intended to create a private cause of action. Under both approaches, however, the key to determining whether a statute and/or regulation creates rights enforceable under

---

**14.** Moreover, in both of the New Jersey cases cited by plaintiffs in support of the proposition that section 605(b) gives rise to a cause of action under section 1983, the height requirements effectively prevented any satellite reception by any resident of the area due to the land configuration of the community. *See Van Meter*, 696 F.Supp. at 1030; *Alsar Technology, Inc. v. Zoning Bd. of Adjustment*, 235 N.J.Super. 471, 563 A.2d 83, 91 (1989). Thus the regulations in question created a community-wide, total ban on any reception via satellite antenna. In the present case, defendant has presented evidence that some twenty satellite antennas are currently located in the Pleasanton area, and presumably each of these is functioning at a satisfactory level.

section 1983 is legislative intent. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 431, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987). As the Court finds that no enforceable right is created under either test, the Court analyzes section 605(b) under both.

### (1). Wilder test.

■ As noted above, under *Wilder* a court will find that a statute creates an express right enforceable under section 1983 where it is shown that Congress intended to benefit the putative plaintiff, that the statute creates a binding obligation rather than merely a congressional preference, and that the interest asserted is sufficiently clear that it may be judicially enforced. Section 605(b) clearly sets forth that individuals who, for their own private viewing, are able to receive unencrypted or non-protected satellite transmissions through their own receive-only antennas are expressly exempted from the civil and criminal penalties otherwise applicable to unauthorized reception of satellite transmission. *See* 47 U.S.C. § 605(e). The fact that the federal interest enunciated is an "exception" rather than statutorily phrased as a benefit will not defeat its establishing a right or "immunity" under section 1983. *See, e.g., Playboy Enters., Inc. v. Public Serv. Comm'n of Puerto Rico*, 906 F.2d 25 (1st Cir.) (holding that the protection from liability for cable operators under the Cable Act created an "immunity" enforceable under section 1983), *cert. denied*, —— U.S. ——, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990). Thus the statute identifies individual owners of satellite antennas as receiving the particular benefit of the statutory exception of section 605(b).

■ The Court finds, however, that there are serious problems with respect to whether the right of access to satellite programming granted under the statute does in fact create a binding obligation on state and local governments. Read in its purest sense, the language of the statute would seem to create an absolute right of uninhibited access to unencrypted and unmarketed satellite transmissions. However, while the language of section 605 served as a major factor in the FCC's adoption of the preemption provisions codified at 47 C.F.R. § 25.104, that very regulation imposed significant limitations on the unequivocal statutory language by permitting governmental interference through local and state regulation so long as it is justified by health, aesthetic, or safety goals, and it does not pose unreasonable limitations on the use of satellite antennas. As the agency responsible for carrying out the congressional objectives set forth in the FCA, the Commission's administrative interpretations are entitled to substantial deference. *Clallam County v. Department of Transp.*, 849 F.2d 424, 428 (9th Cir.1988), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989). Thus the congressionally created right under the statute implying total government obligation and compliance has been tempered by the regulation to permit not only regulation but also a certain level of interference with satellite reception. Therefore the statutory language indicates more a congressional preference than a mandate—*i.e.*, all things being equal, individuals should have full and uninhibited access to a maximum of diversity of programming—such that the fact that a regulation has been preempted does not necessarily create a cause of action for a violation of one's federal rights under section 1983.

### (2) The Cort test.

Even under the four-factor test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), this Court finds again that section 605 did not create an enforceable right under section 1983. Specifically, a court is to examine the following four factors under *Cort*: (1) is plaintiff a member of the class the statute seeks to especially benefit; (2) is there any discernible legislative intent either creating or denying a private cause of action; (3) is such action consistent with the underlying legislative scheme; and (4) is the cause of action one traditionally relegated to state law such that principles of comity argue against inferring a federal cause of action. *Cort*, 95 S.Ct. at 2088.

While section 605(b) is apparently intended to benefit individuals like plaintiffs who own and seek to operate their satellite receive-only antenna according to uses authorized by federal law, a private cause of action has arguably been denied within the meaning of the second factor by the FCC's provision of an "alternative" remedy through the preemption provisions of section 25.104. In like manner, the legislative scheme would again seem to be one in which state and local governments are free to regulate satellite reception up to and until such regulation becomes unreasonable, and then the offensive regulation is merely preempted; providing a separate cause of action for an alleged violation of an individual's civil rights would not seem consistent with this scheme.

Lastly, while the preemptive provisions of 47 C.F.R. § 25.104 clearly indicate that federal law will take priority where necessary to protect the underlying federal interests, the limiting under a federal regulation of an effectively absolute grant of a right of access to all unencrypted or unmarketed programming under a federal statute establishes that local limitation is not only contemplated but is also clearly permissible. Thus it is awkward to conclude that a particularly "localized" area such as a community zoning regulation can create a section 1983 cause of action in the single case in which that local ordinance is found to be "unreasonable" in its application.

The Court therefore concludes under the *Cort* test as well that the federal rights and interests created under section 605 are not the kind which Congress intended to be enforced under section 1983.

### (3) Conclusion.

In conclusion, the Court finds that section 605(b) does not meet the test under either *Wilder* or *Cort* for establishing the existence of a federal right enforceable under section 1983. As discussed previously and conceded by plaintiffs, the statute and regulation contemplate a balancing between community and individual interests, and it is only once that balance places an unreasonable limitation on the individual does a violation of some federal interest first arise. Here, such unreasonableness has been found in only a single instance where arguably plaintiffs' own property and antenna selection may be deemed contributing factors to that unreasonableness. Under these circumstances and in light of the statutory and regulatory interplay, this Court finds that it would be contrary to the intent of the legislature to also provide a separate cause of action under section 1983 following a mere finding of preemption.[15]

For the foregoing reasons, plaintiffs' motion for summary adjudication on this claim for relief action will be denied. Moreover, as there are no remaining issues of fact and therefore this claim for relief may be decided as a matter of law, the Court grants summary adjudication in favor of defendant pursuant to Federal Rule of Civil Procedure 56(d).

### D. *Defendant's counterclaim.*

Defendant seeks summary adjudication that the portions of the Pleasanton ordinance not cited in this Court's prior finding of preemption—specifically, the provisions concerning design review, screening, and no front yard placement—may be severed from the provisions cited in this Court's prior Order, that they are valid, and that

---

**15.** In addition, the Court questions whether the City may be found liable under section 1983 in the present case. While municipalities and other local government units are "persons" that may be sued for violations of 42 U.S.C. § 1983, *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to establish the liability of a municipality under § 1983 for unconstitutional acts by its employees, a plaintiff must show that the violation of his or her constitutional rights was caused by a municipal custom or policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–79, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986).

Enacting the ordinance at issue is clearly a declaration of municipal policy; however, as already discussed, that legislative act does not violate the Constitution. Here, defendant's exercise of its police power falls under federal law only if it differentiates, and its ordinance will be found to violate federal law only on a case-by-case basis. The showing in this case establishes, at most, a single constitutional violation in carrying out enforcement of the ordinance and does not establish that type of continuing unconstitutional practice or policy which *Monell* seeks to address.

they may continue to be enforced. In its prior Order, this Court stated that,

> [a]ccording to the City's own memorandum submitted in opposition to the present motion, the regulations governing satellite antennas are more stringent than those governing other types of antennas in four significant respects.

*See* Order of November 26, 1990, at 4. The Court then went on to discuss the four cited areas of differentiation of height, color, yard setback, and roof mounting. *Id.* Based on these distinctions, the Court then examined the ordinance and its application under the two-prong test of 47 C.F.R. § 25.104, and concluded that the ordinance failed to satisfy the second prong. Therefore, the Court held that, "[b]ecause ... *the ordinance* does not satisfy both prongs of 47 C.F.R. § 25.104, it is preempted by federal law as it applies to this case." *Id.* at 13 (emphasis added).

An initial reading of this Court's ruling indicates that it was intended that the ordinance would be preempted in its entirety. *See Hunter v. City of Whittier*, 209 Cal. App.3d 588, 257 Cal.Rptr. 559 (1989) ("If a community chooses to enact an ordinance which differentiates between types of antennas, *the ordinance is preempted* unless it meets" the requirements of section 25.-104) (emphasis added). Having satisfied itself that the ordinance met the threshold requirement that it differentiated between classes of antenna holders on the four grounds specifically set forth by defendant,[16] the Court then went on to analyze the ordinance's language and operation. Consistently throughout the Order, the Court refers to "the ordinance" in its entirety as a single unit rather than to separate portions. As this Court indicated at the hearing on the present motions, it will not undo Judge Ezra's ruling, and the Court finds that it was Judge Ezra's intent that the ordinance be deemed preempted in its entirety. Therefore defendant's motion for summary adjudication will be denied.

In light of the foregoing, the Court also finds that the facts and the law establish that defendant is not entitled to any relief through enforcement of its preempted ordinance. Therefore, pursuant to Federal Rule of Civil Procedure 41(b), plaintiffs' motion for involuntary dismissal of defendant's counterclaim will be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' motion for summary adjudication is DENIED with respect to all claims. However, pursuant to Federal Rule of Civil Procedure 56(d), summary adjudication is GRANTED in favor of defendant on plaintiffs' second, third, and fourth claims for relief.

2. Defendant's motion for summary adjudication on the issue of severance of the ordinance is DENIED.

3. Plaintiffs' motion for involuntary dismissal of defendant's counterclaim is GRANTED, and such dismissal is to be deemed a judgment on the merits.

IT IS SO ORDERED.

---

**16.** Contrary to defendant's current representation that this Court was previously "limiting" itself exclusively to those four factors, it would seem simply that the Court was willing to accept the affirmative representation and concession of the non-movant on a motion for summary judgment in establishing the requisite jurisdictional hook. There is no indication that the Court even considered the other factors of design review, screening, and non-front yard placement, much less that those provisions should be deemed exempted from the finding of preemption.

Indeed, defendant expressly misrepresents the prior holding of this Court in stating that "Judge Ezra's Order states that the City does not differentiate between types of antennas when requiring landscaping or screening." *See* Memorandum of Points and Authorities in Support of Defendant's Motion at 7:7–9 (filed Apr. 11, 1991). Not only does defendant fail to provide a citation to this Court's prior Order, but the only references to screening and placement are in demonstrating that such requirements are set forth in the ordinance and thus the aesthetic goals of the ordinance were represented in the language itself. There is no attempt in these passages to compare the requirements of screening and placement applicable to satellite antennas to those applicable to more traditional antennas.